UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ELFANASH BEDEDA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN COLVIN,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 2:25-cv-00032-EJY<br><br>**ORDER** |

　　　　Pending before the Court are Plaintiff Elfanash Bededa's Complaint for Review of Final Decision of the Commissioner of Social Security and her Brief in support thereof. ECF Nos. 6, 11. The Court reviewed Plaintiff's Brief, the Commissioner's Brief in response (ECF No. 15), and Plaintiff's Reply (ECF No. 16). The Court finds as follows.

**I.    Background**

　　　　Plaintiff filed an initial application for Supplemental Security Income on November 14, 2019 ("November 2019 Title XVI claim"), which was denied on March 5, 2020. Administrative Record ("AR") 443-451, 140-143. Thereafter, Plaintiff applied for Social Security Disability Insurance ("Title II claim") and Supplemental Security Income benefits ("August 2020 Title XVI claim") on August 4, 2020. AR 461-474. Plaintiff alleged that she became disabled on April 1, 2016, and that her disability arose from depression, schizophrenia, vision issues, a leg issue, and stomach issue. AR 476, 453, 467.

　　　　The procedural history of Plaintiff's Title II claim is linear. Plaintiff's claim was denied initially and on reconsideration respectively on June 7, 2021 and November 17, 2021. AR 151-154, 162-165. On December 1, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 167-168.

　　　　In contrast, the record history of Plaintiff's August 2020 Title XVI claim (and November 2019 Title XVI claim generally) is, at best, unclear. While it is undisputed that Plaintiff's November 2019 Title XVI claim was denied (*see* AR 124-28), with regards to Plaintiff's August 2020 Title

XVI claim, Plaintiff submitted to the Administrative Law Judge ("ALJ") that this claim was "erroneously not processed in a timely manner by the Field Office." AR 291. Plaintiff states the application was sent the same day as the Title II claim through certified mail. *Id*. Plaintiff also states that tracking confirms the August 2020 Title XVI claim arrived at the field office. *Id*. However, as of May 2, 2022, "[d]espite numerous follow up attempts, both by phone and fax, this application still has not been processed." *Id*. In turn, Plaintiff's representative asked the ALJ to reopen Plaintiff's November 2019 Title XVI claim because there was new evidence concerning Plaintiff's medical treatment during the relevant period discovered after the initial determination was made. *Id*. Plaintiff's current counsel inconsistently represents whether Plaintiff's August 2020 Title XVI claim was adjudicated.[1]

On August 25, 2023, Plaintiff's current counsel submitted documents to the presiding ALJ, including a new, undated Title XVI application ("August 2023 Title XVI claim"). AR 573, 550-572. Plaintiff requested "the claim" to be escalated to the hearing level so it may be heard alongside the Title II claim because the medical impairments were the same and "there will be an overlap in time, regardless of the DLI." AR 573.

Plaintiff's hearing before an ALJ took place on November 3, 2023. AR 37-82. The ALJ issued her decision finding Plaintiff not disabled on February 28, 2024. AR 16-24. Plaintiff requested a review of the decision before the Appeals Council on March 25, 2024. AR 432-434. The Appeals Council denied review on November 27, 2024. AR 1-3. Plaintiff timely initiated the instant action seeking judicial review of the Commissioner's decision on January 7, 2025. ECF No. 1.

---

[1] In her Brief, Plaintiff says there is evidence that her Title XVI claims generally are alive and unadjudicated. ECF No. 11 at 4. Plaintiff cites to the exhibit at AR 156-60 which is titled "T16 Notice of Disapproved Claim." *Id*. Similarly, the ALJ asked Plaintiff at the hearing whether the August 2020 Title XVI application had been adjudicated and Plaintiff replied "No, I think it hasn't." AR 39-40.

Conversely, Plaintiff says in her Reply that she has shown that there have been "initial denials of the Title XVI claim." ECF No. 16 at 1. To support this assertion, Plaintiff cites to the denial of her November 2019 Title XVI claim and again to the exhibit titled "T16 Notice of Disapproved Claim." *Id*.

The exhibit at AR 156-60 titled "T16 Notice of Disapproved Claim," is an exact duplicate of the exhibit listed at AR 151-55 titled "T2 Notice of Disapproved Claim." *Compare* AR 151-55 *with* AR 156-60. While the notices do not address which claim is being denied, the Court infers (without certainty) that the "Notice of Disapproved Claim" at 151-55 and 156-60 pertain to the Title II claim exclusively because elsewhere the parties point to AR 123-28 which explains the initial denial of Plaintiff's Title II claim, while the parties do not direct the Court to a similar document explaining a decision to deny the August 2020 Title XVI claim.

2

## II.  Standard of Review

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). Finally, the court may not reverse an ALJ's decision on account of an error that is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

To establish whether a claimant is disabled under the Act, there must be substantial evidence that:

> (a)  the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b)  the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R.

3

§ 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id*.

*Id*. at 1098-99 (internal alterations omitted).

**III. Discussion**

    A.    <u>Summary of ALJ's Findings</u>.

At the outset, the ALJ noted that only Plaintiff's Title II application was being considered in her decision. AR 16. The ALJ also stated that Plaintiff submitted a Title XVI application in August 2023, and asked that the application be escalated to the hearing level so it may be considered alongside the Title II application. *Id*. However, the ALJ found the Title XVI application "was not escalated to the hearing level" and thus, it would not be considered in her decision. *Id*.

At step one, the ALJ determined Plaintiff did not engage in substantial gainful activity between her alleged onset date of April 1, 2016, through her date of last insured of September 30, 2016. AR 18. At step two, the ALJ found Plaintiff had a medically determinable impairment of Major Depressive Disorder with Psychotic Features and Mood Disorder. AR 19. The ALJ did not find Plaintiff's alleged "vision issues, sleep disorder, cardiovascular symptoms, gastrointestinal problems, and back pain" to be medically determinable impairments for the relevant period. *Id*. Critically, the ALJ found that Plaintiff did not have a severe impairment or combinations of impairment. *Id*. The ALJ reasoned that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's statements about the intensity, persistence and limiting effects of the symptoms were not consistent. AR 20. For example, Plaintiff reported issues of depression including "feeling isolated, loss of appetite, insomnia, withdrawal, sadness, crying …, worry, hopelessness, feelings of worthlessness, and low energy …. She also reported audio hallucinations and paranoia." AR 20-21. Despite reporting all of these symptoms at a September 22, 2016 "First Assessment Contact," with the Los Angeles County Department of Mental Health, the ALJ noted that Plaintiff also appeared at the exam "appropriately groomed and oriented," had "unimpaired intellectual functioning, unimpaired memory, no apparent hallucinations or delusions, no behavioral disturbances," as well as being overall cooperative. AR 21. In contrast, the ALJ noted Plaintiff was hospitalized for her mental health three times after the relevant period, once only a little more than three months after the September 16 assessment, which hospitalization

lasted for over two months[2] and a second at which she appeared "disheveled and unable to take care for herself." *Id*. However, the ALJ remarkably concluded, without explanation, that there was "no evidence" to suggest that Plaintiff's mental health seen after the relevant period "relates back in similar fashion" to her mental health during the relevant period. *Id*.

The ALJ further considered the four broad functional areas known as the "paragraph B" criteria. Specifically, the ALJ found Plaintiff had no limitation in understanding, remembering, or applying information by delving back in time (but not forward) in which the evidence showed Plaintiff enjoyed reading, at one time went to college, and being judged to have a "fair memory." The ALJ appears to have considered this history, but not the relevant period regarding "audio hallucinations and paranoia" or subsequent hospitalizations involving Plaintiff's history of psychosis, flat affect, or that Plaintiff was unable to care for herself. AR 21-22. The ALJ further found Plaintiff had only mild limitations interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. AR 22. Each of these conclusions is based on the same selective use of evidence. *Id*. Since the ALJ concluded Plaintiff's medically determinable mental impairment caused no more than "mild" limitation in any of the functional areas and there was, supposedly, no evidence to the contrary, the ALJ found that Plaintiff's medically determinable impairment was non-severe. *Id*. At this juncture, the ALJ stopped her five-step analysis, which the Court finds, as discussed below, is reversible error.

The ALJ made the following determinations on the opinion evidence in the record evidencing use of selective information. The ALJ found Dr. Larisa Levin's opinion that Plaintiff had "no functional limitations" based on an examination in July 2015 to be generally persuasive because although it occurred a year prior to the relevant period, her opinion was consistent with the evidence from the relevant period. AR 23. The ALJ found PA Allen Park's opinion as to Plaintiff's mental health and limitations in a work setting unpersuasive because he did not treat Plaintiff during or near the relevant period, and his conclusions were not supported by his treating notes. *Id*. The ALJ stated that various notations in the record by Plaintiff's providers recommending Plaintiff be considered

---

[2] Specifically, Plaintiff was hospitalized for the first time from January 7 through March 22, 2017. AR 17. Plaintiff was hospitalized a second time in November 2017, and a third time in 2018. AR 21.

disabled are "inherently neither valuable nor persuasive" because the determination of whether someone is disabled belongs to the Commissioner. *Id*. The ALJ found Plaintiff's Global Assessment Functioning score and the state agency medical examiner's conclusion about the insufficiency of the evidence to be neither persuasive nor unpersuasive. AR 22-23. Therefore, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act from the alleged onset date through the date last insured based on her conclusions at step two of the inquiry. AR 23.

B. <u>The Parties' Arguments</u>.

In her Complaint, Plaintiff challenges the ALJ's decision not to adjudicate Plaintiff's Title XVI claim, which ended the disability analysis at step two, as well as the ALJ's assessment of Plaintiff's subjective symptom testimony. ECF No. 6 at 2-3. Specifically, Plaintiff argues that the ALJ erred by not adjudicating the Title XVI claim in her decision, after saying at the hearing that she would do so. ECF No. 11 at 4, *see* AR 40. Plaintiff contends that the August 2020 Title XVI claim satisfied the requirements to re-open the November 2019 Title XVI application, and therefore, these claims should have been consolidated at the hearing. *Id*. Moreover, Plaintiff argues the ALJ "constructively escalated" the Title XVI claim by asking questions that were only pertinent to the Title XVI claim. *Id*. at 5. Plaintiff also argues that the ALJ breached her duty to assist Plaintiff by failing to adjudicate the Title XVI applications. *Id*. at 6. Turning to her second issue, Plaintiff argues that the ALJ erred by ending the disability analysis at step two. *Id*. at 7. In a similar vein, Plaintiff argues that the ALJ's assessment of the medical evidence and subjective symptom testimony are not supported by substantial evidence. *Id*. at 8.

In opposition, the Commissioner argues the ALJ's decision is free of reversible error and supported by substantial evidence. ECF No. 15 at 1. The Commissioner submits there is no final decision on Plaintiff's Title XVI claim and therefore, she has not exhausted her administrative remedies. *Id*. at 5. The Commissioner argues Plaintiff's requested relief—adjudication of the unexhausted Title XVI claim—sounds in mandamus. *Id*. However, the Commissioner argues Plaintiff waived this argument because she did not raise mandamus relief in her Brief despite noting it as a jurisdictional basis in the Complaint. *Id*. With respect to merits, the Commissioner argues the ALJ reasonably declined to adjudicate the Title II claim and Title XVI claims in the same

7

instance because they did not share a common issue. *Id*. Specifically, the Commissioner asserts there is no common issue because there is no overlapping time period since there was a gap of time between when Plaintiff's date last insured and the filing of her Title XVI claims. *Id*. at 6. The Commissioner disputes that the ALJ "constructively escalated" the Title XVI claims because the ALJ's statement was not legally binding, and adjudicating claims without a common issue goes against policy. *Id*. at 8, 5. Lastly, the Commissioner argues that the ALJ's duty to assist is not invoked here because there is no issue with the completeness of the record. *Id*. at 9. As to Plaintiff's second and third issues, the Commissioner argues the ALJ reasonably found Plaintiff was not disabled at step two and substantial evidence supports the ALJ's assessment. *Id*. at 11.

Plaintiff's Reply focuses on her Title XVI claims. ECF No. 16. Plaintiff maintains the record reflects that the Title XVI claims were generally "live and ripe" at the time of the ALJ's hearing. *Id*. at 1. Plaintiff asserts that there have been denials of Plaintiff's Title XVI application and, as a general point, it is the Commissioner's job to notice the denial of a claim. *Id*. Plaintiff counters that there was an overlapping time frame that would have allowed the ALJ to hear her Title II and Title XVI claims concurrently. *Id*. at 2. Plaintiff notes that the ALJ never raised the question of whether common issues exist at the time of the hearing. *Id*. Plaintiff suggests the Commissioner's arguments "ignore the realities that practitioners face everyday (sic)" because ALJs frequently escalate claims, without a supporting citation. *Id*. at 2. Plaintiff offers that remand for consideration and escalation of a Title XVI claim is not extraordinary and points to a case from the Eastern District of Washington. *Id*. at 3.

C.   <u>Analysis</u>.

1.   *This Court does not review Plaintiff's Title XVI Application because there was no final determination by the Commissioner.*

Section 1383(c)(3) provides that Title XVI applications are subject to judicial review as provided by § 405(g). 42 U.S.C. §1383(c)(3). In turn, § 405(g) dictates that federal courts may review "any final decision of the Commissioner ... made after a hearing." 42 U.S.C. § 405(g), *see also Smith v. Berryhill*, 587 U.S. 471, 489 (2019). In *Smith*, the Supreme Court reasoned that "final decision" denotes "some kind of terminal event." *Id*. at 479. The Court held the Appeals Council's

decision to dismiss an untimely request for review made after a hearing is a "final decision" subject to judicial review. *Id*. at 488. In holding so, the Court emphasized the "claim-ending" nature of such determinations. *See id.* at 483.

While the procedural history of Plaintiff's Title XVI claim is unclear at best, the Court finds there was no final decision by the Commissioner of this claim that would allow for judicial review. Here, the ALJ found that Plaintiff's August 2023 Title XVI claim "was not escalated to the hearing level." AR 16. Upon review, the Appeals Council concluded that the ALJ did not have jurisdiction over the Title XVI application protectively filed on August 4, 2020, or the supplementary application filed in August 2023. AR 3. In doing so, the Appeals Council notified the local Social Security Office of the August 2023 Title XVI claim application and directed future communications regarding this application or the August 2020 Title XVI claim to be made to the field office. *Id.* This procedural posture demonstrates the Commissioner has not reached a final decision on Plaintiff's Title XVI application. Therefore, the Court finds Plaintiff's Title XVI application is not ripe for review. *See Beck v. Saul*, Case No. CV 19-401 CG, 2020 WL 1703333 (D.N.M. Apr. 8, 2020) (holding that a plaintiff's Title XVI application was not subject to judicial review because the Appeals Council determined the Title XVI application had not undergone full adjudicatory review and remanded it to the field office); *Saez v. Saul*, Case No. 3:18-cv-2061 (SRU), 2020 WL 2572770 (D. Conn. May 20, 2020) (finding an ALJ's decision not to escalate a corresponding application to the hearing stage and instead welcoming further development of the record was not a final decision subject to federal court review).

Upon remand, the ALJ must determine the status of Plaintiff's Title XVI claims, and as necessary, ensure that any such claim is escalated to the hearing level for adjudication concurrently with the Title II matter. *Bulmaro T. v. Kijakazi*, Case No. 1:20-cv-03146-MKD, 2022 WL 1589266, at *9, (E.D. Wash. Feb. 25, 2022).

> 2. *Substantial evidence does not support the ALJ's decision to end the disability inquiry at step two.*

Step two of the five-step sequential inquiry is a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) *citing Bowen*, 482 U.S.

9

at 153-54. "Once a claimant presents evidence of a severe impairment, an ALJ may find an impairment or combination of impairments 'not severe' at step two only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Glanden v. Kijakazi*, 86 F.4th 838, 844 (9th Cir. 2023) (internal quotations and citations omitted). When an ALJ denies a claim at step two, the proper question is "whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Id. quoting Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (noting that case law is sparse because "it is relatively rare" for an ALJ to deny a claim at step two). If the medical record is inconclusive for the relevant period, or if the ALJ cannot clearly determine the effect of the impairment, the ALJ's inquiry should not end at step two. *Id*. The Ninth Circuit has repeatedly held "that medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *E.g. Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011).

The Court finds that substantial evidence does not support the conclusion that Plaintiff's claim was non-severe. Here, the relevant period commenced on April 1, 2016 (date of alleged onset) through September 30, 2016 (date of last insured). AR 18. During the relevant period, Plaintiff reported numerous symptoms not the least of which included audio hallucinations and paranoia. AR 897. Moreover, Plaintiff spent nearly two and half months hospitalized for visual and auditory hallucinations beginning January 7, 2017—within 100 days of the relevant period—and several times thereafter. AR 966. In fact, the record is replete with evidence of Plaintiff's mental illness. *See* AR 293-97 (summarizing medical evidence in the record by Plaintiff's prior counsel).

To the extent the ALJ's step two determination was based upon finding that Plaintiff's statements were "not entirely consistent," the finding was not supported by clear and convincing evidence. *See Glanden*, 86 F.4th at 838. When there is no evidence of malingering, an ALJ may reject a claimant's testimony about the severity of their symptoms "based on specific findings stating clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1283-84. The ALJ based her finding on her reasoning only, the thrust of which seems to be the unsupported conclusion that "there is no

evidence to suggest the claimant's mental health [after the relevant period] relates" to what she experienced during the relevant period—a conclusion undermined by the record. AR 21.

Indeed, by way of example, Plaintiff was evaluated for her mental health at which she was diagnosed with Major Depressive Disorder with Psychotic Features during the relevant period. AR 897. The ALJ gives credence to the fact that Plaintiff attended the evaluation well groomed and did not experience hallucinations during the evaluation. AR 21. However, the diagnostic justification notes include that Plaintiff reports weekly audio hallucinations and symptoms of paranoia. AR 897. Within 100 days of the relevant period, Plaintiff was hospitalized for two and a half months after being placed on a Legal Hold and the treatment notes reflect her history of psychosis and hallucinations. AR 966. This belies the ALJ's conclusion that there is no connection between the mental health issues experienced during the relevant period and thereafter. The Court rejects the notion that the ALJ had clear and convincing reasons to discount Plaintiff's symptom testimony.

Altogether, the Court finds that substantial evidence does not support the ALJ's decision to end the inquiry at step two of the five step sequential process because Plaintiff "overcame the low hurdle of screening for groundless claims." *Glanden*, 86 F.4th at 848. In doing so, the Court expresses "no view as to whether [Plaintiff] will succeed in proving that [s]he is entitled to benefits; we hold only that denial at step two was premature." *Id*.

**IV.  Order**

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Complaint seeking reversal and remand (ECF No. 6) is GRANTED.

IT IS FURTHER ORDERED that this matter is remanded for further administrative action pursuant to the Social Security Act §205 (g), as amended, 42 U.S.C. § 405(g), sentence four. On remand, the Appeals Council will remand the case to an administrative law judge (ALJ) for a new decision.

1    IT IS FURTHER ORDERED that judgment is granted in favor of Plaintiff and against Defendant. The Clerk of Court must close this case and enter judgment accordingly.

DATED this 7th day of October, 2025.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE